# HIRABELLI v. DANIELS.

No. 2274.   Decided February 5, 1912.   Motion for Modification of
Opinion Denied March 22, 1912 (121 Pac. 966).

1. TRIAL—INSTRUCTIONS—REFUSAL—MATTER COVERED BY OTHER IN-
STRUCTIONS.   In an action for assault and battery, an instruc-
tion on self-defense was properly refused to defendant where
an instruction given by the court fully stated defendant's
rights.   (Page 516.)

2. ASSAULT AND BATTERY—CIVIL ACTIONS—INSTRUCTIONS.   Where
plaintiff in an action for assault and battery claimed punitive
damages, it was error to refuse to instruct that if plaintiff
did not go to defendant's place of business in good faith to
procure his property, but went there to cause trouble with
defendant's workmen or with defendant, and defendant or-
dered him to leave, but he did not do so, defendant could use
such reasonable force as was necessary to eject plaintiff.   (Page
516.)

3. DAMAGES—PUNITIVE DAMAGES—PLEADING—REQUISITES.   Punitive
damages need not be claimed *eo nomine* in the complaint, but
may be recovered under a claim of damages generally.   (Page
518.)

4. DAMAGES—PUNITIVE DAMAGES—PLEADING—REQUISITES.   Punitive
damages for an assault are not recoverable under a complaint
which merely alleges as damages loss of time and expendi-
ture for medical attention.   (Page 518.)

5. APPEAL AND ERROR—REVIEW—DEFECTS NOT OBJECTED TO.   On ap-
peal from a judgment awarding compensatory and punitive
damages for assault, appellant is not entitled to complain of
failure of the complaint to show right to punitive damages,
where he did not object to instructions thereon, and presented
requests to charge thereon.   (Page 518.)

APPEAL from District Court, Third District; *Hon C. W.
Morse*, Judge.

Action by Carmine Hirabelli against Max Daniels.
Judgment for plaintiff.   Defendant appeals.

REVERSED AND REMANDED.

40 Utah 33

*Allen T. Sanford* for appellant.

*Moyle & Van Cott* for respondent.

STRAUP, J.

This is an action to recover damages for an alleged assault and battery. It is alleged in the complaint that the defendant "on the 14th day of May, 1909, willfully, maliciously, unlawfully, and violently assaulted the plaintiff, and struck him with a pair of heavy tailor scissors, and inflicted upon the plaintiff a severe wound over the plaintiff's right eye," and that the plaintiff, who was a tailor capable of earning eighteen dollars a week, was, "by reason of the said defendant's assault and battery committed upon this plaintiff, disabled on account of the injuries which he had thus received from performing any labor for one week, and thereby lost in wages which he otherwise would have earned the sum of eighteen dollars," and became obligated to pay fifty dollars for medical attention. Upon these, and no other, allegations the plaintiff demanded judgment "for the sum of $1000 damages," and "$500 as punitive damages." The defendant filed an answer, denying the allegations of the complaint, and alleging that the defendant was engaged in the tailoring business and had in his employ a number of tailors and workmen, among them the plaintiff; that on the 13th day of May the plaintiff, at the defendant's shop, assaulted and struck the defendant, whereupon the defendant discharged him and ordered him from his place of business. On the following day, the day of the alleged assault and battery, the plaintiff wrongfully visited his shop and endeavored to persuade his employees to quit work and interfered with his business. He again ordered the plaintiff to leave his premises, but the plaintiff refused to leave, cursed the defendant, and again attacked and struck him, and the defendant "in self-defense retaliated and as a result the plaintiff and the defendant engaged in a fight." The case was tried to the court and a jury. The court, in its charge, in harmony with the complaint, restricted the recovery for compensatory damages to

the alleged loss of wages and compensation for medical attention. The court further charged that if the jury found that the alleged assault and battery "was inflicted maliciously and wantonly," as defined by the court, "you will, in addition to awarding the actual damages which you may find, award by way of punishment of the defendant and as a warning to others an additional compensation to the plaintiff an amount as punitive or exemplary damages." The jury rendered a verdict for sixty-eight dollars actual and $500 punitive damages.

The defendant appeals, and contends principally that the court erred in refusing to charge as requested by the defendant, and that the plaintiff was not entitled to punitive damages, and that such damages are excessive.

Upon most of the material facts the evidence is in conflict. The plaintiff was a coat maker. On the 13th the defendant complained of his work, and told him that the sleeves of a coat upon which the plaintiff was working did not fit, and asked him to alter them. The plaintiff refused to do so. Thereupon a dispute arose between them resulting in the plaintiff's discharge. The plaintiff testified that the defendant jerked the coat from him, and assaulted and struck him, and that they then engaged in a fight. The defendant and other witnesses testified that after the dispute had arisen, and as the defendant was descending a ladder or stairway leading from one floor to another, the plaintiff assaulted and struck him on the head. The plaintiff thereupon was ordered to leave the place. The defendant caused his arrest for that assault. Thereafter, and on the afternoon of that day, and on the next day, the plaintiff visited the defendant's place for the purpose, as testified to by him, to obtain his tools. He testified that he was at the defendant's place two or three different times after the trouble arose, that he did not take his tools on the first visits because he had no wagon, and that on the last visit, and as he was talking with one of the workmen, the defendant "came up" (from the floor below) and said to him, "hurry up and get out of the shop," and that the plaintiff replied, "Be a gentleman and let me take my

tools and I'll go," and that the defendant thereupon rushed to him and struck him with the shears, and that the two then engaged in a struggle and fight. Other witnesses testified, as did the defendant, that, when the defendant told the plaintiff to take his tools and go, the plaintiff told him that he would go "as soon as he damned pleased," and "I'll go as soon as I am ready, and I don't care a damn for you or what you say," and that then the plaintiff and the defendant engaged in a fight, and that the defendant hit the plaintiff with the scissors, the defendant contending that the plaintiff first assaulted him. After the plaintiffs discharge on account of the first trouble, and before the second encounter, one of the defendant's workmen with whom the plaintiff had been talking told the defendant that he would not like to have him punish the plaintiff for "he is a working man like me, and, if he (the defendant) tried to punish him hard, maybe we would all quit, and that it would not benefit him to put him (the plaintiff) in jail."

It is urged that the court erred in refusing the defendant's request to charge upon the theory of self-defense. We think the court gave a proper charge upon that question and one in which the rights of the defendant in that particular were fully protected.

He, however, also requested several instructions on the theory that, if the plaintiff in good faith came to the defendant's place of business to get his tools, he was not a trespasser, and had a right to visit the premises for that purpose, but, if he did not go there for that purpose, and came to the defendant's premises for the purpose of causing trouble with the defendant's workmen, or with the defendant, and the defendant ordered him to leave, and he did not do so, then the plaintiff was a trespasser, and that the defendant had the right to use such reasonable force as was necessary to eject the plaintiff from the premises. These requests were asked on the theory of both justification and in mitigation of damages. The court refused the requested instructions, and failed to charge on such a question. That theory, as a defense, among other defenses, was alleged by

the defendant in his answer. There was some evidence tending to support it. He was entitled to have it submitted to the jury on proper instructions, and to take their judgment as to whether the facts in that regard were as claimed by the defendant or the plaintiff. The evidence rendered such a charge pertinent, not so much, perhaps, on the theory of justification of the alleged assault, but as bearing on the question of mitigation of the alleged punitive damages, the alleged wanton and malicious assault. And, as the verdict rendered by the jury was largely founded upon punitive damages, we think the ruling was prejudicial.

Inasmuch as this ruling required a reversal of the judgment, and as the plaintiff, on a retrial of the case, may amend his complaint, it is not necessary to determine whether the plaintiff, on the issues as presented by his complaint, was entitled to exemplary damages, or as to whether such damages are excessive, and as to whether we, in view of our constitutional provision, and of the prior rulings of this court, are authorized to interfere with the judgment on the ground of excessive damages, or upon the ground that the amount of punitive damages as found by the jury is greatly disproportionate to the amount of the alleged and found actual damages.

It is alleged in the complaint that the assault was wanton and malicious. There is evidence, though conflicting as it is, to support such allegations. It is also true that, while it is essential to allege and prove such facts as will warrant the assessment of punitive damages, yet such damages need not be alleged or claimed "eo nomine in the complaint but may be recovered under the claim of damages generally." (13 Cyc. 177, and cases there cited.) But the plaintiff did not allege nor claim general damages. The only damages alleged and claimed in the complaint are that the plaintiff lost one week's services amounting to eighteen dollars, and was obligated to pay fifty dollars for medical attention. For these damages, and no others, he demanded a judgment for $1000 and for $500 punitive damages. He did not allege in his complaint that he sustained any damage or loss in any amount

or for anything, except eighteen dollars for loss of services and fifty dollars for medical attention. No damages are alleged or claimed in the complaint for an injury to the person, or for physical sufferings, or mental anguish, or wounded feelings, or for insults or indignities. We do not mean by this that a plaintiff is required to specifically or specially allege his general damages, for a general allegation of damages with a prayer for a stated amount is sufficient to authorize a recovery of all damages that necessarily result from the act complained of. (5 Pl. & Pr. 731.) But what we do mean and say is that here the complaint contains no *ad damnum* or general allegation of damages whatever. It contains allegations only of special damages, loss of services, and compensation for medical attention. From his complaint it appears the plaintiff seemed to think if he recovered for these he was made whole. That damage was alleged to be sixty-eight dollars. For that he demanded that the defendant pay him $1000 and $500 punitive damages. Now, in view of the claim of only such special damages, and of no allegation of *ad damnum* or general or other damages, it is somewhat doubtful whether the plaintiff was entitled to recover punitive damages. But, as the case must be reversed for other reasons, and as the plaintiff may amend his complaint in these particulars, we find it unnecessary to decide that point.

Nor would we be justified in reversing the judgment on this ground, for the defendant did not object to the court's charging upon, and submitting to the jury, the question of punitive damages, but he himself, as well as the plaintiff, presented requests to charge on that subject.

For the reasons heretofore given, the judgment of the court below is reversed, and the case remanded, with directions to grant a new trial, and to permit, upon proper applications therefor, amendments to the pleadings. Costs to abide the final result.

FRICK, C. J., and McCARTY, J., concur.